Brakebush Bros., Inc. v. Certain Underwriters at Lloyd's of London - Novae 2007 Syndicate Subscribing to Pol'y No. 93PRX17F157, 2022 NCBC 77.

STATE OF NORTH CAROLINA

DAVIE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 367

BRAKEBUSH BROTHERS, INC.
AND HOUSE OF RAEFORD
FARMS,

Plaintiffs,

v.

CERTAIN UNDERWRITERS AT
LLOYD'S OF LONDON - NOVAE
2007 SYNDICATE SUBSCRIBING
TO POLICY WITH NUMBER
93PRX17F157, HALLMARK
SPECIALTY INSURANCE CO.,
EVANSTON INSURANCE CO.,
MAXUM INDEMNITY CO.,
HUDSON SPECIALTY INSURANCE
CO., LIBERTY SURPLUS
INSURANCE CORPORATION,
IRONSHORE SPECIALTY
INSURANCE CO., AND CERTAIN
UNDERWRITERS AT LLOYD'S OF
LONDON -BRIT SYNDICATE 2987
SUBSCRIBING TO POLICY WITH
NUMBER PD-l0972-00,

Defendants.

**ORDER AND OPINION ON
PLAINTIFF BRAKEBUSH
BROTHERS, INC.'S MOTION TO
DISMISS DEFENDANTS' AMENDED
COUNTERCLAIMS AND PLAINTIFFS'
MOTION TO STRIKE DEFENDANTS'
AFFIRMATIVE DEFENSES**

THIS MATTER comes before the Court on Plaintiff Brakebush Brothers, Inc.'s Motion to Dismiss Defendants' Amended Counterclaims and Plaintiffs' Motion to Strike Defendants' Affirmative Defenses ("Motions," ECF No. 159). The Court, having considered the Motions, the parties' briefs, the arguments of counsel, and all appropriate matters of record, concludes that the Motions should be **DENIED**.

*Kilpatrick Townsend & Stockton LLP, by Susan H. Boyles, and Dorsey & Whitney LLP, by Vernle C. Durocher, Kathryn A. Johnson, and Eric Weisenburger, for Plaintiffs Brakebush Brothers, Inc. and House of Raeford Farms.*

*Nelson Mullins Riley & Scarborough LLP, by G. Gray Wilson, Linda L. Helms, and Lorin J. Lapidus, and Tressler LLP, by Timothy M. Jabbour, Anthony M. Tessitore, and Kiera Fitzpatrick, for Defendants Certain Underwriters at Lloyd's of London – Brit Syndicate, Evanston Insurance Company, Maxum Indemnity Company, Hudson Specialty Insurance Company, Liberty Surplus Insurance Corporation, and Ironshore Specialty Insurance Company.*

*Butler Weihmuller Katz Craig LLP, by K. Clark Schirle, N. Khrystyne Smith, and L. Andrew Watson, for Defendant Certain Underwriters at Lloyd's of London Novae 2007 Syndicate.*

*Akerman LLP, by Bryan G. Scott and Jasmine Pitt, for Defendant Hallmark Specialty Insurance Company.*

**INTRODUCTION**

1.     In this lawsuit, Plaintiffs Brakebush Brothers, Inc. ("Brakebush") and House of Raeford Farms, Inc. ("Raeford") have sued a number of insurance companies in a dispute over the amount of Brakebush's insurance claim following a fire at a chicken plant in Mocksville, North Carolina. Raeford was in the process of selling the plant to Brakebush at the time of the fire. The named Defendants all issued insurance policies providing excess coverage for losses sustained at the plant. The Court has previously ruled on several issues relating to the facial validity of Plaintiffs' claims and whether Raeford is a proper plaintiff in this lawsuit. The issues presently before the Court concern (1) the validity of Defendants' counterclaims—namely, whether Defendants have adequately pled claims against Brakebush for statutory fraud in connection with Brakebush's fire insurance claim under Rule 12(b)(6) of the

North Carolina Rules of Civil Procedure; and (2) whether Defendants' affirmative defenses based on their allegations of fraud should be stricken.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

2.      "The Court does not make findings of fact on a motion to dismiss pursuant to Rule 12(b)(6)" and instead recites those factual allegations from the counterclaims that are "relevant and necessary to a determination of the motion." *Chi v. N. Riverfront Marina & Hotel LLLP*, 2022 NCBC LEXIS 98, at **2 (N.C. Super. Ct. Aug. 24, 2022).[2]

3.      On 14 December 2017, a fire damaged a chicken processing plant in Mocksville, North Carolina that was then owned by Raeford. (Hallmark Am. Counterclaims ¶ 1, ECF No. 153.) At the time of the fire, the Mocksville plant was insured by various primary and secondary insurance policies. The named Defendants in this action are Certain Underwriters at Lloyd's of London – Novae 2007 Syndicate Subscribing to Policy with Number 93PRX17F157 ("Novae"); Hallmark Specialty Insurance, Co. ("Hallmark"); Evanston Insurance Co. ("Evanston"); Liberty Surplus Insurance Corporation ("Liberty"); Maxum Indemnity Co. ("Maxum"); Hudson

---

[1] Although Brakebush and Raeford are now co-Plaintiffs in this case, Defendants' counterclaims were asserted solely against Brakebush. For this reason, Brakebush alone has filed the present motion to dismiss Defendants' counterclaims. However, the accompanying motion to strike certain affirmative defenses asserted by Defendants has been brought by Brakebush and Raeford together.

[2] Defendants collectively have filed three sets of counterclaims. However, the allegations contained within each set are essentially identical. As the parties have done in their respective briefs, the Court elects to recite the relevant facts by drawing primarily from one set of counterclaims. However, the Court's recitation of the facts and ensuing analysis shall be deemed to apply to each set of counterclaims.

Specialty Insurance Co. ("Hudson"); Ironshore Specialty Insurance Co. ("Ironshore"); and Certain Underwriters at Lloyd's of London-Brit Syndicate 2987 Subscribing to Policy with Number PD-1 0972-00 ("Brit")—each of which provided excess insurance coverage for the plant. (Hallmark Am. Counterclaims ¶ 2; Brit, Evanston, Maxum, Hudson, Ironshore, and Liberty Am. Counterclaims ¶ 5, ECF No. 152; Novae Am. Counterclaims ¶ 2, ECF No. 154.)

4. At the time the fire occurred, Brakebush was in the process of purchasing the plant from Raeford. (Hallmark Am. Counterclaims ¶ 3.) As discussed below, the documents evidencing the purchase provided that Raeford would assign to Brakebush the right to collect insurance proceeds relating to the fire damage to the plant. In their counterclaims, Defendants assert that although Brakebush "sought and obtained written consent from the primary [insurers] to the assignment of the primary insurance policies on the Mocksville Plant from Raeford to Brakebush[,]" Brakebush "did not seek consent from the defendant excess [insurers] . . . that were providing Raeford excess insurance coverage for the Mocksville Plant." (Hallmark Am. Counterclaims ¶¶ 4–6.)

5. The counterclaims further allege that "Brakebush did not seek consent from the defendant excess insurers because it and Raeford understood that proceeds from the primary layer of insurance coverage would be sufficient to repair the fire damage to the Mocksville Plant." (Hallmark Am. Counterclaims ¶ 7.) Brakebush and Raeford acknowledged in their Asset Purchase Agreement ("APA") that " 'the estimated gross loss from the Fire Event is \$16,374,501 and the net claim is

$16,124,501,' which amounts were well within the $20 million primary layer of insurance coverage applicable to the Mocksville Plant." (Hallmark Am. Counterclaims ¶ 8.) Brakebush and Raeford proceeded to finalize the purchase of the plant based on the terms of the APA, which purported to assign from Raeford to Brakebush the right to recover insurance proceeds from the fire. (Hallmark Am. Counterclaims ¶ 9.)

6.      The counterclaims assert that "[a]fter acquiring the Mocksville Plant, Brakebush took over repair of the fire damage while also beginning to implement its plan to materially expand, renovate, and improve the Mocksville Plant well beyond the damage caused by the fire." (Hallmark Am. Counterclaims ¶ 11.) On or about 29 April 2020, despite having previously estimated the fire losses at $16,124,501, "Brakebush obtained payment from the primary insurers in the amount of $20 million, thereby exhausting the available primary coverage." (Hallmark Am. Counterclaims ¶ 12.) According to Defendants, "[s]ince the funds from the primary polices on the Mocksville Plant would not be sufficient to pay for Brakebush's new, improved, and expanded facility, Brakebush targeted defendants' excess insurance policies as a prime source of funding for these improvements." (Hallmark Am. Counterclaims ¶ 13.)

7.      Defendants allege that J.S. Held[3] consultants Frank Simones and Peter McCabe "participated in at least three discussions regarding both the alleged loss

_____

[3] J.S. Held was a company hired by Defendants to participate in the process of claims adjustment for the loss from the Mocksville fire. (*See, e.g.,* Am. Complaint ¶ 37, Hallmark Am. Answer ¶ 37, ECF No. 153.)

incurred and scope of the proposed reconstruction project with Brakebush's owners, officers, and representatives"—Carey Brakebush ("Carey"), Greg Brakebush, and Terry Brakebush along with the company's chief financial officer, Gregory Huff. (Hallmark Am. Counterclaims ¶ 14.) During a conversation with Carey, Simones, and Huff in October 2019, Carey "informed Mr. Simones that he intended to increase the size, height, and square footage of the building despite Simones' assessment that the fire damage was limited to only 21,000 square feet." (Hallmark Am. Counterclaims ¶ 15.)

8. In response, Simones told Carey that a claim to cover any portion of the plant greater than the 21,000 square feet of the documented damage "would be outside the scope of the fire damage and would constitute a betterment." (Hallmark Am. Counterclaims ¶ 16.) Defendants assert that "[Carey] became visibly upset and left the room where these men were meeting because [he] did not like Mr. Simones' assessment." (Hallmark Am. Counterclaims ¶ 16.) The counterclaims allege that "Mr. Simones opined that Mr. Brakebush simply wanted a bigger and better building and that a proposal greater in size than the 21,000 square feet actually damaged in the fire and resultant damage would constitute reconstruction well beyond the scope of the fire damage." (Hallmark Am. Counterclaims ¶ 17.) However, Carey "persisted by informing Simones that the insurance companies should nonetheless pay for the expanded scope of the project and betterments." (Hallmark Am. Counterclaims ¶ 17.)

9. According to Defendants, during the assessment and adjustment process, "Brakebush submitted multiple spreadsheets to the defendants that

continued to reflect material increases in the amounts claimed that included betterments for the project above and beyond actual fire damage." (Hallmark Am. Counterclaims ¶ 18.) Specifically, Defendants contend that on both 13 December 2019 and 3 February 2020, "Brakebush purposefully prepared and submitted a grossly misrepresented and inflated loss claim to the defendants representing that it had sustained a fire damage loss in excess of $41 million[.]" (Hallmark Am. Counterclaims ¶ 19.) In July 2020, Brakebush increased the claim to an amount "in excess of $44 million." (Hallmark Am. Counterclaims ¶ 19.)

10. Defendants further allege that in submitting its proof of loss form, "Brakebush falsely swore that the amounts it claimed 'did not originate by any act, design, or procurement on the part of your insured . . . .' " (Hallmark Am. Counterclaims ¶ 21.) According to Defendants, Brakebush further misrepresented that "no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss." (Hallmark Am. Counterclaims ¶ 21.) Defendants assert that Brakebush "included within its claimed fire loss amounts that arose solely from its subsequent expansion, renovation, and improvement of the Mocksville Plant." (Hallmark Am. Counterclaims ¶ 22.)

11. Following its submission of the proof of loss information, Brakebush allegedly demanded that Defendants issue payments based on their policies "under the guise of needing funds to repair damage to the Mocksville Plant from the actual fire loss." (Am. Compl. ¶ 23.) In so doing, Defendants allege that "Brakebush squarely misrepresented the nature and scope of the damaged property and sought

impermissible and excess insurance funding for the expansion, renovation, and improvement of the Mocksville Plant." (Hallmark Am. Counterclaim ¶ 23.)

12. In early June 2020, Defendants paid $4,221,465.83 to Brakebush under the policies pursuant to an express reservation of rights. (Hallmark Am. Counterclaims ¶ 25.) Defendants' counterclaims assert that Brakebush continues to demand additional insurance proceeds under their policies "for amounts it spent to improve and expand the Mocksville Plant rather than legitimate fire loss expenses." (Hallmark Am. Counterclaims ¶ 26.)

13. On 12 October 2020, Brakebush initiated this lawsuit against Defendants by filing a Complaint in Davie County Superior Court in which it asserted claims for declaratory judgment, breach of contract, bad faith, and unfair and deceptive trade practices under N.C.G.S. § 75-1.1. (Compl. ¶¶ 47–79, ECF No. 3.)

14. Brakebush filed an Amended Complaint on 10 December 2021, adding Raeford as a co-Plaintiff in this action.

15. Since the lawsuit was originally filed, the Court has issued a number of rulings on various issues associated with Plaintiffs' claims, none of which are relevant to the present Motions.

16. On 7 June 2022, Answers and Counterclaims were filed on behalf of all Defendants. (ECF Nos. 135, 136, 137.)[4] On 12 and 18 August 2022, Defendants filed Amended Answers and Counterclaims. (ECF Nos. 152, 153, 154.) The Amended

---

[4] One set of counterclaims was filed on behalf of Defendants Evanston, Maxum, Hudson, Liberty, Ironshore, and Brit, a second set on behalf of Novae, and a third set on behalf of Hallmark. (ECF Nos. 135, 136, 137.)

Counterclaims consist of (1) a request for a declaratory judgment declaring Defendants' insurance policies to be void due to Brakebush's material misrepresentations in its fire loss claim; and (2) a claim for recoupment and unjust enrichment against Brakebush. (ECF Nos. 135, 136, 137.) The Counterclaims are all based on Defendants' assertion that Brakebush violated N.C.G.S. § 58-44-16(f)(2) by fraudulently submitting a claim seeking insurance proceeds for amounts substantially beyond the actual fire damage to the plant. Each of Defendants' Answers also contain affirmative defenses that are similarly premised on the assertion that the insurance claim was in violation of N.C.G.S. § 58-44-16(f)(2).

17. On 21 September 2022, Plaintiffs filed the present Motions seeking the dismissal of Defendants' counterclaims and requesting that the affirmative defenses based on N.C.G.S. § 58-44-16(f)(2) be stricken.

18. This matter came before the Court for a hearing via Webex on 16 November 2022. The Motions are now ripe for decision.

## LEGAL STANDARD

19. "It is well-established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the [counterclaim] on its face reveals that no law supports the plaintiff's claim; (2) the [counterclaim] on its face reveals the absence of facts sufficient to make a good claim; or (3) the [counterclaim] discloses some fact that necessarily defeats the plaintiff's claim.'" *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (quoting *Wood v. Guilford Cnty.*, 355 N.C. 161, 166 (2002)). The Court may also "reject allegations that are contradicted by the documents attached, specifically

referred to, or incorporated by reference in the [counterclaim]." *Laster v. Francis*, 199 N.C. App. 572, 577 (2009) (cleaned up).

20. Rule 12(f) provides that a court "may order stricken from any pleading any insufficient defense or any redundant, irrelevant, immaterial, impertinent, or scandalous matter." N.C. R. Civ. P. 12(f). The purpose of this Rule is to "avoid expenditure of time and resources before trial by removing spurious issues, whether introduced by original or amended complaint." *Estrada v. Jaques*, 70 N.C. App. 627, 642 (1984) (citation omitted). A motion to strike "is addressed to the sound discretion of the trial court[.]" *Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 25 (2003) (citation omitted).

## ANALYSIS

### I. Defendants' Counterclaims

21. One of the few things upon which the parties agree is that Defendants' second counterclaim (for recoupment and unjust enrichment) hinges upon the validity of its first counterclaim (for declaratory judgment). This is logical because the counterclaim for recoupment and unjust enrichment is predicated upon a determination by the Court that the subject insurance policies are void under N.C.G.S. § 58-44-16(f)(2) as a result of Brakebush's alleged misrepresentations. Similarly, Plaintiffs' request that the Court strike those affirmative defenses contained in Defendants' Amended Answers that allege fraud is based on Brakebush's argument that Defendants' declaratory judgment counterclaim fails to sufficiently plead an actual violation of N.C.G.S. § 58-44-16(f)(2). Therefore, the

Court will first address whether Defendants have stated a valid claim for relief under Rule 12(b)(6) as to their declaratory judgment counterclaim.

## A. Declaratory Judgment Counterclaim

22.    N.C.G.S. § 58-44-16(f) contains a number of substantive provisions that must be contained in fire insurance policies covering property in this State. N.C.G.S. § 58-44-16(b) (2021).[5] One of these provisions reads as follows:

> **(2) Concealment or fraud.** — This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject of this insurance, or the interest of the insured in the subject of this insurance, or in the case of any fraud or false swearing by the insured relating [to] the subject of this insurance.

N.C.G.S. § 58-44-16(f)(2).

23.    In its motion to dismiss Defendants' counterclaims, Brakebush argues that the counterclaims fail to allege facts that satisfy every element of a claim under G.S. § 58-44-16(f)(2). Defendants, not surprisingly, disagree.

24.    In analyzing the parties' competing arguments, the Court is guided by our Supreme Court's decision in *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362 (1985). In *Bryant*, the plaintiffs-insureds sued the defendant-insurer to recover proceeds under a fire insurance policy after a fire destroyed their residence. The insurer raised a coverage defense by asserting that the insureds had made material misrepresentations in connection with their proof of loss form in violation of a prior— and virtually identical—version of § 58-44-16(f)(2). Following a jury verdict in favor

---

[5] A few specific types of fire insurance policies are exempted from these requirements, but none of those types are relevant to the present case.

of the insureds, the trial court granted judgment notwithstanding the verdict in favor of the insurer. *Id.* at 364–67, 369.

25.     In its opinion, the Supreme Court began its analysis by stating the following regarding the insurer's statutory fraud defense:

> As is true in the present case, many insurers raise misrepresentation as a basis for an affirmative defense and seek to void the policy on that ground . . . To prevail in its defense, the insurance company must prove the insured made statements that were: 1) false, 2) material, and 3) knowingly and willfully made.

*Id.* at 370 (citations omitted).

26.     The Supreme Court then considered whether the following portions of the trial court's jury instructions were proper:

> Now, the defendant, Nationwide Mutual Fire Insurance Company, contends that the plaintiffs made material representations with regard to the insured premises, and that [sic] their interest therein, as well as the value of the premises. The defendant therefore contends that these material representations void the policy and alleviate Nationwide from any liability. Conversely, of course, the plaintiffs contend that they did no such thing and that if they made any misrepresentations they were simply innocent mistakes and that they were not intentional and that they were not material.
>
> . . . .
>
> Under the law a willful and intentional misrepresentation of the extent of the fire loss, or a willful and intentional misrepresentation as to the interest of the insured in the premises, or the value thereof, with the intention of deceiving the insurer, will preclude any recovery on the policy. I instruct you, members of the jury, that a mere overstatement of value of the goods or premises lost in a fire, or an error in judgment with respect to their value, is not sufficient to prove an intentional misrepresentation. On the other hand, if the insureds knowingly made false statements to Nationwide with regard to a material matter, the law infers or presumes that the insured intended to deceive the insurer, Nationwide.

Further, I instruct you that it is not necessary for the insurer, Nationwide, to be actually deceived, prejudiced, or injured by the false or fraudulent statements made by the insured in order to void the policy of insurance. Therefore, you need not be persuaded that Nationwide relied or acted upon the statements of the insured to its detriment, it being sufficient to void the policy that the plaintiffs made material representations knowing them to be false.

. . .

Now, members of the jury, a misrepresentation is material if the facts misrepresented would reasonably be expected to influence the decision of the defendant insurance company in investigating, adjusting or paying the claim of the plaintiffs.

*Id.* at 370–71.

27. The Supreme Court stated that "the substance of these instructions, read in context with the remaining charges to the jury . . . accurately explain the applicable law for consideration by the jury." *Id.* at 371. The Supreme Court further ruled that the trial court had erred in granting judgment notwithstanding the verdict given the existence of a conflict in the evidence on whether the plaintiffs had, in fact, knowingly and willfully made false statements in their claim. *Id.* at 372, 378.

28. In the course of its analysis, the Supreme Court articulated definitions of several key terms in the statute that are highly relevant to the present case. Notably, the Supreme Court explained that "[t]o 'willfully misrepresent' is to make a statement deliberately and intentionally knowing it to be false." *Id.* at 374 (citation omitted). Furthermore, as noted above, the Supreme Court expressly stated its approval of the trial court's instructions to the jury on the following elements of the insurer's statutory fraud defense: (1) that "a misrepresentation is material if the facts misrepresented would reasonably be expected to influence the decision of the

[insurer] in investigating, adjusting or paying the claim"; (2) that if a false statement is knowingly made by an insured, "the law infers or presumes that the insured intended to deceive the insurer"; and (3) that the jury was not required to find either that the insurer was "actually deceived, prejudiced, or injured by" the insured's fraudulent statement or that the insurer "relied or acted upon the statements of the insured to its detriment[.]" *Id.* at 370–71, 383.

29.   *Bryant* has not been modified by any subsequent decision from our Supreme Court, so it remains the controlling decision in North Carolina on the elements of a statutory fraud claim under § 58-44-16(f)(2).  Thus, although a claim for *common law* fraud contains additional requirements, *Bryant* makes clear that only three elements must be pled in order to state a claim for statutory fraud under § 58-44-16(f)(2): (1) a false statement; (2) that was knowingly and willfully made; and (3) that was material.  *Id.* at 370 (citation omitted).

30.   The Court must now apply the principles set out in *Bryant* to the present Motions.  First, with regard to the falsity element, the counterclaims allege that Brakebush's insurance claim fraudulently asserted entitlement to insurance proceeds substantially beyond what was necessary to cover the actual fire damage to the plant and was instead intended to improperly fund improvements to—and an expansion of—the Mocksville plant.  These allegations satisfy the element of falsity: Defendants have alleged facts showing that, in its proof of loss claim, Brakebush swore that it was entitled to receive millions of dollars in insurance proceeds despite its knowledge

that significant portions of the claimed amounts were not actually related to the fire damage.

31. Second, it is likewise clear that the declaratory judgment counterclaim contains sufficient allegations that such statements were knowingly and willfully made. As noted above, Defendants' counterclaims assert that Brakebush submitted a grossly inflated claim designed to obtain funds for "betterments" and modifications to the plant despite its owners and other representatives being on actual notice from conversations with an insurance adjuster that the insurance would not cover such expansion or improvements to the plant that were unrelated to the fire damage.

32. Third, Defendants have sufficiently alleged that these misrepresentations "would reasonably be expected to influence the decision of the defendant insurance company in investigating, adjusting or paying the claim of the plaintiffs" and thus are "material." *See Bryant*, 313 N.C. at 383. In applying the liberal Rule 12(b)(6) standard, the Court cannot conclude that Brakebush's allegedly false statements would not have influenced an insurer's decision in processing Brakebush's claim.

33. The Court rejects Brakebush's attempts to characterize the declaratory judgment counterclaim as alleging nothing more than an honest disagreement between an insured and an insurer regarding the amount of an insurance claim. As *Bryant* makes clear, "a mere overstatement of value of the goods or premises lost in a fire, or an error in judgment with respect to their value, is not sufficient to prove an intentional misrepresentation." *Id*. However, that is not what Defendants have

alleged. To the contrary, Defendants take great pains in their counterclaims to make clear that they are asserting that the inflated proof of loss information was the result of deliberate fraud rather than due to an honest mistake by Brakebush as to the amount of proceeds it was entitled to recover.

34. Indeed, the Court notes that in the case on which Brakebush primarily relies for this argument—*Shields v. Nationwide Mut. Fire Ins. Co.*, 61 N.C. App. 365 (1983)—our Court of Appeals held that the insured's allegedly fraudulent statement raised a jury question as to whether the insured's claim was fraudulent. Therefore, *Shields* hardly supports the dismissal of Brakebush's claim under Rule 12(b)(6).

35. Brakebush's only other arguments are that because Defendants' declaratory judgment counterclaim is grounded in fraud, this claim is subject to the "heightened pleading" standard for fraud claims contained in N.C. R. Civ. P. 9(b) and that Brakebush did not receive fair notice of the specific nature of the counterclaim. Pursuant to Rule 9(b), "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." N.C. R. Civ. P. 9(b).

36. The parties spend a significant amount of time in their respective briefs debating whether the particularity requirement of Rule 9(b) actually applies to a *statutory* fraud claim under G.S. § 58-44-16(f)(2). However, the Court need not decide that issue given that it finds the counterclaims were pled with sufficient particularity—even if Rule 9(b) is applicable.

37.     The declaratory judgment counterclaim unambiguously alleges that (1) Brakebush's proof of loss form falsely sought the recovery of millions of dollars in insurance proceeds to which Brakebush was clearly not entitled; (2) these portions of the claimed losses were not limited to the 21,000-square-foot area of the plant that actually sustained fire damage; and (3) Brakebush's intent in submitting a fraudulently exaggerated claim was to induce Defendants to pay for improvements and expansions to the plant.  Furthermore, as discussed above, Defendants have made reference in their counterclaim to *specific* conversations between Brakebush representatives and persons involved in the claims adjustment process during which Brakebush  owners and employees were expressly told that its insurance policies would not cover such improvements to the plant but that the Brakebush personnel were not deterred.  Although the counterclaim does not attempt to differentiate between actual line items in the proof of loss form in order to show which ones were appropriate and which ones were not, that level of specificity is not required at the Rule 12(b)(6) stage under these circumstances.

38.     In short, although Brakebush vigorously disputes the validity of Defendants' allegations, the Court concludes that they are sufficient at the motion to dismiss stage.  Accordingly, the Court **DENIES** Brakebush's motion to dismiss Defendants' declaratory judgment counterclaim.

## B. Recoupment and Unjust Enrichment Counterclaim

39.     As noted earlier, Defendants' remaining counterclaim for recoupment and unjust enrichment hinges on the validity of their declaratory judgment

counterclaim—alleging that if the Court agrees that the policies at issue should be declared void due to Brakebush's material misrepresentations, Defendants are each entitled to recoup their respective contributions to the $4,221,465.83 payment made to Brakebush in June 2020. Brakebush's only argument in its Motion regarding this counterclaim is that if the Court dismisses the declaratory judgment counterclaim, then the claim for recoupment and unjust enrichment must be dismissed as well.

40. Because the Court has now determined that Brakebush's Motion should be denied as to Defendants' declaratory judgment counterclaim, dismissal of the second counterclaim is inappropriate as well. Brakebush's Motion to Dismiss is therefore **DENIED** as to the counterclaim for recoupment and unjust enrichment.

## II. Motion to Strike

41. Finally, Plaintiffs also ask the Court to strike those affirmative defenses contained in Defendants' Answers that are based on G.S. § 58-44-16(f). For all of the reasons set out above, this argument likewise lacks merit.

42. Accordingly, Plaintiffs' Motion to Strike is **DENIED**.

## CONCLUSION

**THEREFORE, IT IS ORDERED** that Brakebush's Motion to Dismiss Defendants' Amended Counterclaims and Plaintiffs' Motion to Strike Defendants' Affirmative Defenses are **DENIED**.

SO ORDERED, this the 5th day of December, 2022.


/s/ Mark A. Davis
Mark A. Davis
Special Superior Court Judge for
Complex Business Cases